**IN THE UNITED STATES BANKRUPTCY COURT FOR
THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| IN RE: | CASE NO. 14-5704 EAG |
| MERCEDES PICHARDO ACOSTA, | CHAPTER 7 |
| DEBTOR. | FILED & ENTERED ON 07/03/2018 |

**OPINION AND ORDER**

Pending before the court are competing motions to withdraw unclaimed funds filed by the debtor Mercedes Pichardo Acosta and the United States. (Docket Nos. 200 & 201.) For the reasons stated below, the court grants the debtor's motion and denies the motion by the United States.

**Procedural History**

On July 11, 2014, Mercedes Pichardo Acosta filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code.[1] (Docket No. 1.) The Internal Revenue Service (the "IRS") filed a proof of claim on behalf of the United States on July 24, 2014, which it subsequently amended several times. (Claims Register No. 2-4.) The IRS's amended claim is in the total amount of $111,751.68, of which $83,482.50 is listed as secured and $19,920.81 as priority. Id. The IRS's claim corresponds to unpaid federal income, employment, and unemployment

---

[1] Unless otherwise indicated, the terms "Bankruptcy Code," "section" and "§" refer to Title 11 of the United States Code, 11 U.S.C. §§101-1532, as amended. All references to "Bankruptcy Rule" are to the Federal Rules of Bankruptcy Procedure, and all references to "Rule" are to the Federal Rules of Civil Procedure. All references to "Local Bankruptcy Rule" are to the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Puerto Rico. And all references to "Local Civil Rule" are to the Local Rules of Civil Practice of the United States District Court for the District of Puerto Rico.

tax debts. Id. To secure its claim, the IRS filed notices of federal tax liens with the district court as well as several sections of the Property Registry. Id.

Just over two years after the case was filed, on July 19, 2016, the case was converted to chapter 7 on the debtor's motion. (Docket Nos. 168 & 170.) Although Ms. Pichardo Acosta proposed a number of plans while in chapter 13, no plan was ever confirmed. (Docket Nos. 24, 91, 98, 99, 101, 106, 124 & 146.) On July 18, 2016, the chapter 13 trustee submitted his final report and account indicating that the debtor paid the trustee $51,375.00 during the pendency of her chapter 13 case, and that, of that amount, $47,001.39 was to be refunded to the debtor. (Docket No. 173.) The balance went towards the trustee's expenses and compensation. Id.

On September 19, 2016, the chapter 7 trustee moved to dismiss the case due to the debtor's failure to appear at two scheduled meetings of creditors and failure to provide documents required under section 521(a)(1). (Docket No. 192.) The debtor did not oppose, and the case was dismissed on November 7, 2016. (Docket No. 195.) The debtor did not receive a discharge, and the chapter 7 trustee filed a report of no distribution on November 9, 2016. (Docket No. 196.)

On November 23, 2016, the chapter 13 trustee filed a report regarding unclaimed monies, stating that he had in his possession funds destined for the debtor in the amount of $47,001.39. (Docket No. 199.) The trustee indicated that the debtor had failed to claim the check and/or provide an accurate mailing address, and that the check had been returned by the post office. Id. The trustee requested leave for the funds to be deposited with the Clerk of the Court. Id.

The debtor moved to withdraw the unclaimed funds on November 23, 2016.  (Docket No. 199.)  The following day, the United States filed an opposition, arguing that it has a superior claim to the funds due to statutory tax liens recorded pre-petition against the debtor. (Docket No. 201.)

The funds were deposited in the court's registry account on December 13, 2016, notice of which was sent that same day to the United States.  The United States was ordered to file several supplementary briefs to clarify its position, which it did.  (Docket Nos. 210, 218, 221, 223, 224 & 226.)

**Legal Analysis**

When a debtor files for bankruptcy under chapter 13, she must commence making plan payments "not later than 30 days after the date of the filing of the plan or the order for relief, whichever is earlier."  11 U.S.C. § 1326(a)(1).  Those payments are retained by the chapter 13 trustee "until confirmation or denial of confirmation."  11 U.S.C. § 1326(a)(2).  If a plan is not confirmed, the statute requires, with two exceptions not applicable here, that the trustee return those payments to the debtor after deducting any allowed administrative expenses. Id. The same holds true whether the chapter 13 case is dismissed or converted to chapter 7.

Courts are split on whether a creditor can levy on the funds held by the chapter 13 trustee before they are remitted to the debtor. Many courts have not allowed it, reasoning that "the plain and unambiguous language of section 1326(a)(2) specifically governs the disposition of chapter 13 plan payments, and that it clearly provides that the funds, minus adequate protection payments and administrative claims, should be returned to debtors." In re Inyamah, 378 B.R. 183, 185 (Bankr. S.D. Ohio 2007); see, e.g., In re Davis, 2004 Bankr. LEXIS

3

1197 (Bankr. M.D. Ala. June 16, 2004); In re Bailey, 330 B.R. 775 (Bankr. D. Or. 2005); In re Locascio, 481 B.R. 285 (Bankr. S.D.N.Y. 2012); In re Rivera, 2013 Bankr. LEXIS 4349 (Bankr. D.P.R. Oct. 15, 2013).

Other courts have held that despite the clear mandate of section 1326(a)(2) directing the chapter 13 trustee to return the funds to the debtor, the funds are actually unprotected from creditors and subject to levy, given that the dismissal of the case terminated the bankruptcy estate as well as the automatic stay. See Massachusetts v. Pappalardo (In re Steenstra), 307 B.R. 732, 739-40 (1st Cir. B.A.P. 2004) (in permitting levy by state taxing agency, the court concluded that "because the dismissal of a bankruptcy case prior to confirmation removes the protections afforded by the Bankruptcy Code, the funds held by a Chapter 13 trustee after administration of the estate are not afforded protection from levy."); see, e.g., In re Doherty, 229 B.R. 461 (Bankr. E.D. Wash.1999); Clark v. Commercial State Bank, 2001 U.S. Dist. LEXIS 6458 (W.D. Tex. 2001).

The analysis for some courts has turned on whether the underlying lien derives from state or federal law. In In re Pruitt, 2008 Bankr. LEXIS 1571 (Bankr. M.D. Ala. May 15, 2008), the court distinguished the Davis case, in which the court found that the trustee had a "federal obligation" under the Bankruptcy Code that preempted a state court garnishment statute. In re Pruitt, 2008 Bankr. LEXIS 1571 at *4-*5. The Pruitt court instead was dealing with the federal tax levy statute, and, with preemption no longer an issue, the court saw its task as "harmonizing" two federal provisions: section 1326 and 26 U.S.C. § 6331. Id. In deciding that the funds held by the chapter 13 trustee were subject to levy by the IRS, the court looked to Beam v. IRS (In re Beam),192 F.3d 941 (9th Cir. 1999). Id. at *7-*8. In Beam, the court, while

4

admitting that "specific statutes normally trump conflicting, general statutes," nevertheless found that such funds could be levied upon by the IRS because they were not among those categories of property specifically exempted from levy under 26 U.S.C. § 6334(a). Beam, 192 F.3d at 944-45. See In re Brown, 280 B.R. 231 (Bankr. E.D. Wis. 2002) (citing Beam, court found that the clerk of the bankruptcy court must turn over unclaimed funds subject to IRS levy).

The court in In re Sexton, 397 B.R. 375 (Bankr. M.D. Tenn. 2008), however, held otherwise. In determining whether a chapter 13 trustee was authorized to disburse funds to the debtors under section 1326(a)(2) despite being served with a continuing writ of garnishment issued by another district court, the court began its analysis with the fundamentals, stating:

> The Supreme Court has explained that in interpreting a statute a court should always turn first to one, cardinal canon before all others: "We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 253-54(1992) (citations omitted).

Sexton, 397 B.R. at 377.

Allowing the funds to be disbursed to the debtors, the Sexton court reasoned that its ruling "does not place federal statutes at odds, because the ruling does no more than return the parties to the near status quo had bankruptcy not been filed allowing the United States to pursue the debtors outside of bankruptcy." Id. at 377-78.

This court agrees with the Sexton and Inyamah line of cases, and adopts their reasoning herein based both on the rules of statutory construction as well as sound public policy.

As the court in <u>Davis</u> stated:

> This disposition of the money serves several purposes. First, it fosters the policy of encouraging debtors who are financially able to repay their debts to file chapter 13. It ensures that debtors who attempt chapter 13 will not be penalized for an unconfirmed attempt.
>
> Returning the money to the debtor ensures the orderly and efficient disposition of chapter 13 cases. Congress no doubt considered the possibility that creditors would like to participate in the money held by the trustee. By requiring the trustee to return the money to the debtor, Congress ensured that any attempts to reach the money would ensue outside the jurisdiction of the bankruptcy court. Therefore, unconfirmed cases may be closed as quickly as statutorily possible following dismissal. Holding to the contrary would create a "race to the trustee" and effectively ignore the statutory mandate to return the money to the debtor.

<u>In re Davis</u>, 2004 Bankr. LEXIS 1197, at *4-*6 (Bankr. M.D. Ala. June 16, 2004).

This reasoning is even more applicable in our case, where the funds in question are not being held by the chapter 13 trustee, but rather have already been deposited into the court's registry account. If the court permitted the United States to levy on these funds, it would create a "race to the clerk's office," where creditors–even if limited only to those with federal liens–would line up to file notices of levy or garnishment on the court.[2] Our court is simply not set up for that. It does not have the internal processes necessary to orderly dispose of

---

[2]/For instance, it does not appear that the United States ever served a notice of levy in this case on the Clerk of the Court, as provided by 26 U.S.C. § 6331. At least one court has held that this is a sufficient basis for denying the IRS's motion for turnover, even under <u>Beam</u>. <u>In re Van Etten</u>, 2007 Bankr. LEXIS 4908, at *14-*15 (B.A.P. 9th Cir. June 19, 2007). <u>But see</u> <u>In re Brown</u>, 280 B.R. 231, 234 (Bankr. E.D. Wis. 2002) ("While the IRS has not served the Clerk with a notice of levy, an administrative act preliminary to seizing a particular asset or fund subject to a tax lien, the IRS has issued the functional equivalent of a levy by challenging the debtor's right to the funds held by the Clerk. The debtor has had the opportunity to challenge that claim and thus is in no way denied due process. Just as the trustee in <u>Beam</u> was required to honor the IRS levy, the Clerk of Bankruptcy Court is likewise required to honor the IRS'[s] claim to the funds on which it has a lien.").

unclaimed funds other than through the processes provided for under section 347(a), Bankruptcy Rule 3011, and Local Bankruptcy Rule 3011-1. Circumventing these processes would lead to lengthy delays in the disposition of chapter 13 cases where no plan was confirmed. Furthermore, it would disincentive debtors from filing under chapter 13, which, as the Supreme Court has held, is a "wholly voluntary" process meant to "benefit debtors and creditors alike." Harris v. Viegelahn, 135 S. Ct. 1829, 1835 (2015).

**Conclusion**

For the reasons stated above, the court grants the debtor's motion to withdraw unclaimed funds in the amount of $47,001.39 at docket number 200, and denies the United States's motion at docket number 201. A separate order will be entered. In so doing, the court notes that nothing in its order serves to extinguish any valid federal tax lien the United States may have imposed on the debtor. See, e.g., In re Clifford, 182 B.R. 229, 231 (Bankr. E.D. Ill. 1995) (holding state levy created a lien on the funds that "follows the funds into the hands of the Debtor" and that the "lien continues to be imposed thereon until the total amount due is paid by the Debtor.").

In Ponce, Puerto Rico, this 3rd day of July, 2018.

Edward A. Godoy
U.S. Bankruptcy Judge